400 F.2d 20
 PHELPS DODGE CORPORATION, a corporation, Appellant,
v.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a
corporation, Appellee.
W. S RANCH COMPANY, Appellant,
v.
The ATCHISON, TOPEKA AND SANTA FE RAILWAY COMPANY, a
corporation, Appellee.
 Nos. 9682, 9683.
 United States Court of Appeals Tenth Circuit.
 Sept. 5, 1968.
 
 Earl H. Carroll, of Evans, Kitchel & Jencks, Phoenix, Ariz., for appellant, Phelps Dodge Corp.
 A. K. Montgomery and Richard S. Morris, of Montgomery, Federici & Andrews, Santa Fe, N.M. (G. Gordon Robertson of Robertson & Robertson, Raton, N.M., was on the brief) for appellant, W. S. Ranch Co.
 Richard G. Cooper, Albuquerque, N.M. (Bryan G. Johnson, Richard K. Knowlton and Marshall G. Martin, Albuquerque, N.M., were on the brief) for appellee, The Atchison, Topeka and Santa Fe Railway Co.
 Before MURRAH, Chief Judge, and LEWIS and BREITENSTEIN, Circuit Judges.
 DAVID T. LEWIS, Circuit Judge.
 
 
 1
 These appeals come from the District of New Mexico after entry of judgments on separate jury verdicts determining the amount of just compensation due each of the two appellants, Phelps Dodge Corporation and W. S. Ranch Company, for lands taken by the appellee railroad through condemnation proceedings for a right-of-way across lands owned by appellants. The action was initiated by the Santa Fe in state court and was removed to Federal jurisdiction by timely petition filed and granted pursuant to 28 U.S.C. 1441 and premised upon diversity of citizenship and the requisite amount in issue.
 
 
 2
 After removal and in accord with Rule 71A(k) and applicable New Mexico law[1] the trial court appointed commissioners to assess appellants damages sustained by the taking. The statutory report of the commission[2] set damages to Phelps Dodge at $40,550 and to W. S. Ranch at $59,500. The court confirmed the report of the commissioners but appellants demanded a trial de novo by jury.[3] The cases were consolidated for trial and resulted in an award of $34,490 to Phelps Dodge and of $28,860 to W. S. Ranch. The landowners now join in the appellate contentions that the trial court erred in refusing to grant separate trials; erred in refusing to allow the jury to view the subject properties; erred in and misapplied controlling New Mexico law relative to the testimony of the Santa Fe expert witnesses on land values and thus accepted verdicts based upon incompetent and insubstantial evidence. W. S. Ranch also contends that the trial court improperly ruled out certain exhibits that reflected particularized income from its property.
 
 
 3
 The claim that these cases should have been separated for trial runs contrary to generally accepted procedural practice[4] and thus imposes upon appellants in this court a very heavy burden of persuasion that the trial court clearly abused its discretion in refusing to depart from such practice. We are not so persuaded. Both appellants are large landowners in Colfax County, New Mexico, W. S. Ranch having 477,929 acres of which 230 acres were condemned, and Phelps Dodge having 50,285 acres of which 341 acres were condemned. Both properties were operated primarily as cow-calf ranches and both were bisected by the Santa Fe right-of-way. The terrain of the properties was roughly the same, both having natural summer and winter pasturage and both abounding in wild game and approaching in some areas the point of wilderness. The only difference worth noting in the appellants' respective lands and legal claims is premised upon the fact that W. S. Ranch had been developing commercial big game hunting in the vicinity of the railroad right-of-way and claimed that this recreational use was the highest and best use of the particular acreage taken from its vast holding. Phelps Dodge relied primarily on ranching for property valuation. However, the trial court carefully required the Santa Fe to segregate its evidence pertaining to the appellants and this single distinguishing factor in the cases was clearly preserved for the jury's consideration. We see no likelihood that the jury was confused or that either appellant was prejudiced by a consolidated trial. Gwathmey v. United States, 5 Cir., 215 F.2d 148, is clearly distinguishable upon its facts.
 
 
 4
 The request of appellants to have the jury visit and view the subject properties was refused by the trial court as simply not practical. Again, this is a matter peculiarly subject to the discretion of the Court, United States v. Johnson, 9 Cir., 285 F.2d 35, and practicality certainly must be a prime consideration in the exercise of such discretion. Here, the properties were some one hundred miles from the place of trial (Albuquerque) and as the court stated: 'Under any circumstances there's no conceivable way that they could see the entire ranch. I think that rather obvious within any time that's permissible.' So, too, the problems of housing, feeding, and transporting a jury composed of both sexes would add considerable complexity to the proposed trip. We find no abuse of discretion in denying the request.
 
 
 5
 All parties agree, and the court held, that the proper measure of damages in New Mexico condemnation cases where a partial taking occurs clearly requires
 
 
 6
 the ascertainment of the fair market value of the entire property immediately before the taking and the fair market value of that remaining immediately after the taking. Roosevelt County Electric Co-op., Inc. v. Bowley, 78 N.M. 9, 427 P.2d 894, 896.
 
 
 7
 and that in ascertaining the fair market value of the entire property immediately before the taking one is required to consider not only 'the uses to which it was applied at the time of condemnation but the highest and best uses for which it was adaptable.' City of Albuquerque v. Chapman, 76 N.M. 162, 413 P.2d 204, 209. Each appellant earnestly contends that the expert testimony produced by the Santa Fe did not comply with the cited legal requirements and was neither competent nor probative of the proper measure of damages. The qualifications of the witnesses are also attacked generally and particularly.
 
 
 8
 The railroad called upon three witnesses to express expert opinions on damages, Miller, Morrow and Harton. The background of these witnesses varied but in simple summary Miller could be termed a practical expert possessing long experience as a cattle ranch manager in the area, familiar with the area, sales within the area, and with ranch operations where easements cross the property. Morrow was a real estate operator, landowner of some 7500 acres in Colfax used as a ranch and familiar with the area and sales therein. Harton was a professional appraiser whose qualifications were beyond question. The acceptance or rejection of the qualifications of a witness offered as an expert is, once more, a matter for the discretionary decision of the trial court, and when accepted, the weight to be given testimony is for the jury Chapman v. United States, 10 Cir., 169 F.2d 641. We find no abuse of discretion in allowing any of these witnesses to testify for each possessed at least minimal qualifications. But basic qualification, as appellants correctly point out, is not enough to support a verdict if the expressed opinion is improperly based and carries no weight as a matter of law. As this court has recently stated in United States v. Sowards,370 F.2d 87 at 92:
 
 
 9
 'Qualified and knowledgeable witnesses may give their opinion or estimate of the value of the property taken, but to have probative value, that opinion or estimate must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption. It must have a rational foundation.
 
 
 10
 The principal thrust of each appellant's argument, although varying in the technique of presentation, finalizes in the contention that the verdicts are not supported by substantial evidence because the Santa Fe appraisers did not premise their respective opinions on proper standards of law or fact. Perhaps appellants' position could be summarized as a claim that the appraisers, in fact, appraised the lands taken, not the ranches before and after the taking, with appellant W. S. Ranch adding the claim that the appraisements did not purport to reflect the highest and best use of its properties. Appellee would characterize appellants' argument as an attack upon the weight of the evidence and not upon the existence of any evidence to support the verdicts.
 
 
 11
 The witness Miller had inspected the right-of-way property taken on three occasions. He observed specific items of damage to the ranches occasioned by the building of the railroad and estimated these specifics to damage the owners in the sum of $5,000 each. He did not itemize. He testified flatly that he did not believe that the operation of the cattle ranches would be much disturbed by the railroad, that the balance of high and low country on the ranches would not be materially affected, that there was, indeed, a difference between bottom land, hillside, and irrigated pasture but 'they all go with the land.' This witness valued Phelps Dodge before the taking at $1,500,000, being roughly 50,000 acres, with an average value of $30 per acre and at $1,474,500 after the taking. He computed the damage as the $5,000 for specifics and $60 per acre for the approximate number of acres taken. His evaluation of the W. S. Ranch damage was similarly computed.
 
 
 12
 Although the testimony of Miller clearly reflects compliance with the before and after rule of applicable New Mexico law appellants assert that such compliance was an afterthought, pure form, and that actually Miller only appraised the value of the land taken. It is true that the witness first ignored the total acreage of the W. S. Ranch and considered only a 50,000-acre unit surrounding the right-of-way for the basis of his before-taking value. After objection that there was no evidence supporting an assumption that 50,000 acres could be carved out of the total ranch as an economic unit it became clear that the witness had used the 50,000-acre unit for a different reason. He testified that the acreage more remote in distance could in no way be affected by the taking. He then testified to the value of the entire ranch by simply adding $30 per acre for the remaining acreage.
 
 
 13
 Since Miller's basic premise was that average rangeland on ranches in Colfax County was worth $30 per acre it cannot be said that his appraisement rose no higher than a consideration of the value of the land taken simply because he doubled that figure and applied it to the acreage taken in arriving at an after-taking value for the ranches. As the trial court commented, there are numerous ways to arrive at both before and after values. Miller utilized merely one of such methods for certainly reference in some way to acreage taken and general land values must be made.
 
 
 14
 Appellants also attack Miller's testimony because it became apparent that the witness was unaware of and did not specifically consider some factors that would affect value. For example, the witness did not know what specific operational improvements were on the lands. But his opinion that representative rangeland was worth $30 per acre was based, at least in part, on his knowledge of the selling price of other operational ranches which had been sold in the area and particularly one which had been sold at 'twenty-seven something' per acre including all improvements.
 
 
 15
 Although Miller knew that game abounded on all the ranches in Colfax County he gave no consideration to any actual value of the lands for recreational purposes. In fact, he frankly stated that if the lands had a recreational value he was not qualified to assess such value. W. S. Ranch thus argues that Miller's testimony must be rejected as not reflecting the highest and best use of its property. And, indeed, if the parties or the jury had accepted as a fact that the highest and best use of W. S. Ranch was for big game hunting and that such use had been impaired by the condemnation then Miller's testimony would have to be rejected in toto. But the claims of W. S. Ranch in such regard were disputed and the Santa Fe could properly present its witness to give an opinion bottomed on an assumption of facts in harmony with its version of the case. We conclude that Miller's testimony was competent under New Mexico law, was not improperly founded, and carried permissible probative value. The jury could very well have considered his opinion as honestly presented but entitled to little weight. The verdicts do not indicate otherwise.
 
 
 16
 Many of the objections made to Miller's testimony are extended to the testimony of Santa Fe's other two witnesses, Morrow and Harton, but must be accorded even less persuasive impact. Morrow assigned to his before-taking value of the ranches the highest per acre value of any sale known to him. His knowledge of such sales, his knowledge of the ranches themselves, and his general experience were such as to qualify him under accepted standards. Harton, a professional appraiser, gave his appraisal with much more specificity and care. He explained his approach thus:
 
 
 17
 'I made a study of sales of other ranches and arrived at a before value of the entire ranch, and then I formed an opinion as to the possible effect the railroad would have on a prospective purchaser wanting to buy the ranch, assuming the Phelps Dodge were willing to sell; subtracted the latter from the former, got a difference, and then attempted to allocate the difference in the land taken, and damages to the remainder.'
 
 
 18
 Although complaint is made that Harton arrived at his before-taking value by a 'Mathematical rounding off process' the witness explained that million dollar ranches are seldom sold at odd figures and that buyers and sellers usually bargain in units of $10,000.
 
 
 19
 Condemnation at best is an unhappy event aggravated by the inexactitude of expert opinion evidence forced into the subjective (and often unrealistic) beliefs of the parties as to value and damage. Expert opinion often varies greatly and subjective opinion nearly always. Both do in this case. However, we must conclude that appellants' contentions are leveled, and with understandable emphasis, at the result of the case and the weight of the evidence rather than at the legal sufficiency of the evidence.
 
 
 20
 Finally, W. S. Ranch contends the trial court erred in rejecting two proposed accounting exhibits purporting to show operational income from the company's recreational facilities. The proffer of evidence was made to show 'the value of the land' for recreational purposes. Under some circumstances accounting evidence of profit from the use of land may probe the value of the land or the nature of its use, as with direct rental income, but more often such technical evidence of gross and net income creates but diverting and controversial side issues. Managerial competency, proper methods of accounting, and other secondary issues are injected into the case and are remote from the main issue. They may be rejected by the court. See Chapman v. United States, supra. In the case at bar, the proposed exhibits reflected income from the sale of liquor and the rental of jeeps to hunting guests and other such items having no direct bearing upon land valuation. This appellant was in no other way restricted in its proof concerning recreational use or value and we find no error in the court's ruling.
 
 
 21
 The judgments are severally affirmed.
 
 
 
 [1]
 New Mexico Stat.Ann. (1953), Sec. 22-9-3
 
 
 [2]
 Id
 
 
 [3]
 New Mexico Stat.Ann. (1953), Sec. 22-9-8
 
 
 [4]
 'In condemnation proceedings, different tracts of land may be grouped together for trial purposes, and each landowner cannot have a separate trial unless he shows some exceptional circumstances applicable only to his land.' Barron & Holtzoff, Vol. 2B, 944 at 198. '* * * the courts have emphasized that separate trials should not be ordered unless such a disposition is clearly necessary. * * *' 5 Moore, Fed.Prac., P42.03 at 1211