**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**811.92 ACRES OF LAND, MORE OR LESS, Situate IN EDMONSON AND HART COUNTIES, STATE OF KENTUCKY, William R. Padgett, et al., Tracts Nos. 203, 603, 603–E and 603–E–2, W. G. Reynolds and Mary N. Reynolds, Defendants-Appellants.**

**No. 18292.**

United States Court of Appeals
Sixth Circuit.

Dec. 9, 1968.

As Modified on Denial of Rehearing
Jan. 23, 1969.

J. David Francis, Bowling Green, Ky., for appellants; Erwin S. Solomon, Hot Springs, Va., on brief.

Robert S. Lynch, Atty., Dept. of Justice, Washington, D. C., for appellee; Clyde O. Martz, Asst. Atty. Gen., Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C., Ernest W. Rivers, U. S. Atty., Louisville, Ky., on brief.

Before O'SULLIVAN, CELEBREZZE and COMBS, Circuit Judges.

CELEBREZZE, Circuit Judge.

This appeal involves the valuation in a condemnation action instituted April 18, 1962 by the United States of America, hereinafter Appellee, against lands owned by W. G. Reynolds and Mary N. Reynolds, hereinafter the Appellants.

Appellants owned two tracts of land which were contained within the 811.92 acres condemned for the Nolin Reservoir Project in Edmonson and Hart Counties,

Kentucky. The property was designated Tract 203 and Tract 603, E and E–2. The latter Tract was taken in fee and easement.

The condemnation suit was tried before a jury which granted Appellants $20,000 as just and reasonable compensation for the taking of their land. It is Appellants' contention that misstatements contained within the Court's résumé of the evidence greatly prejudiced the jury's decision that 78 acres within Tract 603 were within the scope of the project as defined in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162.

In 1938 Congress authorized the construction of the Nolin Reservoir under the Flood Control Act. P.L. 761, 75th Congress. Funds were not appropriated for the planning of the project until July of 1956. Two years later on July 14, 1958, the Chief of Engineers approved a General Design Memorandum which contained all phases of construction and land acquisition. It was brought out through testimony that these memorandums generally contemplate the construction of appropriate recreational areas around reservoir sites. Neither this document nor any other design memorandum was entered into evidence.

Congress appropriated construction funds on October 12, 1958, but the project was not commenced until January of 1959.

Tract No. 603, the valuation of which is in dispute here, was purchased by Appellants in two separate transactions— one in October of 1959 and the other in January of 1960. The part of this Tract lying below the 566-foot level was to be inundated by the reservoir's water. No question is raised concerning its valuation, for it was admittedly within the scope of the project. The controversy revolves around the 78 acres contained within Tract 603 which was taken for public recreational purposes. This specific area was first designated in Design Memorandum No. 8, approved October 1, 1959. However, it was not contained within the memorandum as originally submitted on June 17, 1959. Appellants contend that its addition was merely an afterthought. The question the District Court placed before the jury was whether this property was probably within the scope of the project from the time the Government was committed to it and whether it was known that it probably would be condemned.

Prior to the swearing in of the jury the Court and the parties agreed that the rule set forth in Miller v. United States, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162, would govern any questions relating to enhanced value. It was at this time that Appellee placed Max Bohrer on the stand in an attempt to have the Court rule that no evidence of enhancement could be placed before the jury. Mr. Bohrer had been an employee of the Corps of Engineers for twenty-four years and presently was Assistant Chief of the Real Estate Division, in the District Office. Appellants introduced three witnesses to refute the testimony of Max Bohrer.

The Court decided that it was faced with "a mixed question of law and fact * * * [which] * * * addresses itself to the Court to be determined before we go into the trial of the case." The Court then determined that under Miller v. United States, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162, the property was within the scope of the project from the beginning. Therefore the evidence of both parties would be limited to the value of the property without any enhancement. After a short recess, the jury was called and sworn to try the case. During the opening statements the Court called the attorneys to the bench and discussed its prior interpretation of the Miller case. At this point the Court reversed itself and decided that the mixed question of fact and law concerning enhanced value should be submitted to the jury. The Court then permitted the attorneys to

supplement their original statements to the jury.

■ Appellee takes issue with this interpretation of *Miller*. It does not believe the Court should have submitted to the jury the question of whether the 78 acres were within the scope of the project from the beginning of the Government's commitment to it. It would have this Court believe that under Rule 71A (h), Federal Rules of Civil Procedure, only a narrowly construed issue of just compensation may be submitted to the jury or commission. The Rule states that all other issues shall be tried by the court. Federal Rule of Civil Proceduce 71A(h).

In United States v. Certain Lands, Located In the Townships of Raritan and Woodbridge, Middlesex County, N. J., 144 F.Supp. 206 (D.C., 1956) modified, 246 F.2d 823 (3rd Cir. 1957) the court held that the issue of just compensation should not be interpreted as meaning that the jury's function is to be restricted solely to dollar amounts. The jury's province must be broad enough to weigh evidence which relates directly to the issue of just compensation. Courts have held that the question of whether or not a piece of property was within the scope of a project at a specific time is a proper one to be submitted to the jury. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), rehearing denied 318 U. S. 798, 63 S.Ct. 557, 87 L.Ed. 1162, cf. John L. Roper Lumber Co. v. United States, 150 F.2d 329 (4th Cir. 1945). In United States v. Crance, 341 F.2d 161 (8th Cir. 1965), it was only by agreement that the District Court, rather than the jury, was to decide whether the land was within the scope of the project as set forth in United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162. There only the monetary issue of just compensation was submitted to the jury.

In the case before this Court there was no such agreement. Therefore, the issue of just compensation which was submitted to the jury properly contained the question relating to the scope of the project. The Court dealt with this question in its first interrogatory to the jury.[1] The Court specifically wanted the jury to decide whether or not a recreational area was within the scope of the project prior to its dealing with the monetary aspects. If recreational areas were so contemplated, then the landowner would not be entitled to any enhanced value due to the project. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162, United States v. First Pyramid Life Insurance Company of America, 382 F.2d 804 (8th Cir. 1967), United States v. Crance, 341 F.2d 161 (8th Cir. 1965). Since the jury decided that the 78 acre tract was within the scope of the project from the beginning, it did not include in its award any value due to enhancement. Unless there is other error present, this Court will not overturn the verdict of the jury based on substantial evidence. Lavender v. Kurn, 327 U.S. 645, 646, 654, 66 S.Ct. 740, 90 L.Ed. 916 (1945), Jayson v. United States, 294 F. 2d 808 (5th Cir. 1961).*

■ On appeal this Court is primarily concerned with the propriety of

---

[1] "Do you believe that the 78 acres of land which was later developed by the Government as a recreation area and ramp were probably within the scope of the project from the time the Government was committed to build the dam and it was a known fact that this 78 number of acres probably would be condemned? Answer 'Yes' or 'No'.
Yes X
No. * * *"

* After argument of counsel and submission to the Court, Amen Wardy v. United States, 402 F.2d 762 (5th Cir. 1968) was called to this Court's attention. We do not adhere to the ruling in *Wardy*, supra, for under the facts presented in the principal case the scope of the project is so interrelated with the valuation as to bring it within the issue of just compensation and therefore was a proper matter for jury determination.

the trial Court's instructions. The question arises as to whether the Court invaded the province of the jury by referring to certain facts contained within the testimony of the Government's chief witness Max Bohrer, taken outside the presence of the jury.

Appellants contend that the Court's résumé of Max Bohrers' testimony greatly prejudiced them in the eyes of the jury.[2] They point particularly to the section where the witness was to have said that, "it was all within the reasonable probability of being taken when they first started the project." It is Appellants' contention that Mr. Bohrer only stated that the residents should have known that the 78 acre parcel was going to be taken by the Government because it was adjacent to the land to be taken for the reservoir.

This Court is of the opinion that Appellants were prejudiced by the Court's summation of Mr. Bohrer's testimony.

The record disclosed that in his testimony before the jury Mr. Bohrer stated that the Corps of Engineers' regulations which have been in effect since 1944 provided for the acquisition of recreational areas.[3] He stated that when a project is authorized it is contemplated that it will include recreational areas. He went on to say that the general design memorandum normally planned for access points. However, Mr. Bohrer did not state that the Nolin Reservoir project, specifically, contemplated recreational areas, nor did he say that all of the property was within the reasonable probability of being taken when the Government started the project.

The record reveals that Max Bohrer and other witnesses were examined both in and outside the presence of the jury. It also discloses that part of the testimony referred to by the Court in its résumé was taken outside the presence of the jury.[4] The part of the résumé

---

2. In summarizing Max Bohrer's testimony the Court stated:

    "The United States offers the testimony of Mr. Bohrer, who says back in '58, '59, it was all taken, this was made into a ramp and into a recreation area. It was all taken at the same time and that *it was all within the reasonable probability of being taken when they first started on the development.*" (Emphasis added)

3. These regulations may be similar to those referred to in United States v. Crance, 341 F.2d 161, 162 (8th Cir. 1965). The significant factor here was that the project contemplated recreational areas from its very inception. With reasonable certainty one could predict that land lying beyond the perimeter of the reservoir would have to be taken for recreational purposes. The Court reasoned that since the Crance property abutted the reservoir line and recreational areas had been contemplated, it was within the sphere of probable acquisition as defined in the *Miller* decision. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336 (1943), rehearing denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162.

4. The record reveals that there was a preliminary motion to be taken up pri-

or to going into the trial. Appellee assured the Court that if allowed to put on its proof, it would show that the question of enhancement should be decided by the Court. The Court decided to allow the testimony, but excluded the jury from the courtroom. It was at this time that Max Bohrer was first called to the stand. Relevant questions and answers contained in his testimony are as follows:

    "Q. Now, do the regulations of the Corps of Engineers make any provision for public use and access areas on these particular type projects?

    A. Well, in the General Design Memorandum, which was approved by the Chief of Engineers in Washington, on the 14th day of July 1958, the General Design Memorandum contemplated the acquisition of land and the construction of appropriate access facilities around the reservoir."

    \*　　\*　　\*　　\*　　\*　　\*

    "Q. \* \* \* My question is, did you have any knowledge, representing the Corps of Engineers, that the plans to acquire this recreational area known as Site 7 was disclosed to the public in any way or to the landowner, prior to the date of March 31st, 1961?

    "A. Well, of course, because this land is adjacent to the reservoir, it is in the category of what I would call

being questioned by Appellants introduced new evidence to the jury.

The Court's summary of Mr. Bohrer's testimony related to the material question of whether the 78 acres were within the scope of the project from the time the Government became committed to it.[5] This Court is not trying to limit the trial Court's right to summarize the facts—especially in a complex situation as was here presented. Minner v. United States, 57 F.2d 506 (10th Cir. 1932), Rudd v. United States, 173 F. 912, 914 (8th Cir. 1909). However, a judge should be very careful and exacting in exercising this function. He is not to assume the role of a witness, nor is he to introduce new evidence. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L.Ed. 1321 (1933), Benes v. United States, 276 F.2d 99 (6th Cir. 1960). The jurors must be allowed to exercise their independent judgment upon the facts which are presented to them. The Court's inclusion of its review of evidential matters taken outside the presence of the jury in its comments to the jury represents reversible error.

■ The Court cautioned the jury that they were not to accept what he said as necessarily true nor were they to consider it as all of the evidence. He assured them that they were the ultimate triers of fact and that it was up to them to decide what the evidence was and what the inferences were to be drawn

from it. Such an expression did not cure error in the charge pertaining to Mr. Bohrer's testimony. Quercia v. United States, 289 U.S. 466, 53 S.Ct. 698, 77 L. Ed. 1321 (1932), Nunley v. Pettway Oil Company, 346 F.2d 95 (6th Cir. 1965).

■ Appellants also claim error on several other grounds. They claim that the jury should have been instructed to bring in separate verdicts for each tract of land. No objection was raised concerning this particular point until after the jury had returned with a single verdict. The trial Court was not given the opportunity to correct itself, if error existed. It is the opinion of this Court that since Appellants enjoyed the benefit of the instruction as it stood, they are not now entitled to bring it up on appeal. Welders Supply, Inc. v. American Employers' Insurance Company, 358 F.2d 593 (6th Cir. 1966).

■ Appellants also contend that the Court erred by not giving their requested instructions A, B, C, and D. This Court has held before in similar situations and so holds here that error will not result in such a refusal where the trial Court's instructions covered substantially the same thing. Cobb v. Union Railway Co., 318 F.2d 33 (6th Cir. 1963), cert. den. 375 U.S. 945, 84 S.Ct. 352, 11 L.Ed.2d 275; United States Fidelity & Guaranty Co. v. Canale, 257 F.2d 138 (6th Cir. 1958).

---

likely to be taken for the project. As I said before, the planning goes on from the beginning to the end of this project and all land that is adjoining the reservoir or in the immediate vicinity thereof is susceptible to acquisition by the government until the project is completed."

COURT; * * *

"Q. Now, Mr. Bohrer, the question is whether the respondent landowners, that is the owners of this land in question, were probably within the scope of the project from the time the government was committed to it. * * *

"A. These lands were included within the scope of the project in our General Design Memorandum and—because part of the area we are talking about is required by flood control."

This testimony was made with specific reference to the 78 acre tract. It did not refer to vague or general Corps policies. The content is similar to the Court's résumé which proceeded in a chronological order and dealt separately with each witness as he took the stand. The order in which the Court's résumé deals with the witnesses is the same as they fall within the transcript of the proceeding. Where the Court has dealt with a witness twice, the witness has appeared both in and out of the jury's presence. It should be noted that the part of the résumé which is questioned was the first of two references to Max Bohrer.

5. See note 2.

Lastly, the Appellants contend that they were prejudiced when the trial Court replaced one of the jurors with an alternate. The juror, R. S. Wingfield, had been seen talking with one of the witnesses. Although there was no actual showing of misconduct between the witness and the juror, the Court felt that the encounter raised a question of impropriety. We do not see how the Appellants were prejudiced by the Court's use of discretion. Larson v. General Motors Corporation, 148 F.2d 319 (2d Cir. 1945), cf. Jayson v. United States, 294 F.2d 808 (5th Cir. 1961). Alternate jurors were available and the Court felt there was sufficient reason to remove Wingfield to insure a just decision.

The judgment of the District Court is reversed and the case is remanded for further proceedings.