455 F.2d 1242
 UNITED STATES of America, Appellee,
v.
412.93 ACRES OF LAND, MORE OR LESS, Situate IN FRANKLIN AND
TOWAMENSING TOWNSHIPS, CARBON COUNTY, STATE OF PENNSYLVANIA,
TRACT NO. 113, Percy and Mabel Campbell, Tract No. 114,
George and Anne Schild, Appellants.
UNITED STATES of America, Appellee,
v.
63.85 ACRES OF LAND, MORE OR LESS, Situate IN FRANKLIN AND
TOWAMENSING TOWNSHIPS, CARBON COUNTY, STATE OF PENNSYLVANIA,
TRACT NO. 618, Hector and Janet McFarquhar, Tract No. 637,
Susie E. Lawrence, Appellants.
UNITED STATES of America, Appellee,
v.
195.11 ACRES OF LAND, MORE OR LESS, Situate IN FRANKLIN AND
TOWAMENSING TOWNSHIPS, CARBON COUNTY, STATE OF
PENNSYLVANIA, TRACT NO. 621, John F.,
Jr., and Louise S. Stine, Appellants.
 Nos. 17730-17733 and 18246.
 United States Court of Appeals,
Third Circuit.
 Argued Dec. 7, 1971.
Decided Feb. 8, 1972.
 
 Leon H. Kline, Philadelphia, Pa. (Martin H. Philip, Palmerton, Pa., on the brief), for appellants.
 Jacques B. Gelin, Dept. of Justice, Washington, D. C. (Shiro Kashiwa, Asst. Atty. Gen., S. John Cottone, U. S. Atty., Scranton, Pa., Edmund B. Clark, Atty., Dept. of Justice, Washington, D. C., on the brief), for appellee.
 Before HASTIE, ALDISERT and JAMES ROSEN, Circuit Judges.
 OPINION OF THE COURT
 PER CURIAM:
 
 
 1
 These are appeals from judgments entered in the United States District Court for the Middle District of Pennsylvania from jury verdicts determining just compensation in eminent domain proceedings instituted by the United States.
 
 
 2
 The Government brought these consolidated condemnation proceedings on behalf of the Corps of Engineers of the Department of the Army to acquire fee simple title to the properties owned by the appellants in connection with the construction of the Beltzville Dam and Reservoir in Carbon County, Pennsylvania.
 
 
 3
 The Campbell[1] and Schild[2] cases were tried together in a jury trial which commenced on October 28, 1968 and concluded on October 30, 1968. In these proceedings two other landowners, Wentz and Geiling, were party defendants, but they did not appeal from the jury verdicts.
 
 
 4
 The McFarquhar[3] and Lawrence[4] trial was commenced on October 31, 1968 and concluded on November 1, 1968. Another landowner, Miller, was included as a party defendant, but he did not appeal.
 
 
 5
 In the third jury trial, which commenced on April 28, 1969 and concluded on April 30, 1969, property owner, Stine[5], and another landowner, Battey, were named defendants. Battey did not appeal.
 
 
 6
 Prior to the trial the landowners moved for individual and separate trials for each tract of condemned land. They also sought to depose the Government's appraiser and expert witness, Clifford L. Orbaker. Finally, at the trial, the landowners proposed to cross-examine Orbaker as to his employment contract with the Government. The trial judge ruled against the landowners on all three issues.[6]
 
 
 7
 A summary of the evidence and jury verdicts relative to the properties condemned is as follows:
 
 
 8
 Landowner and Landowner's Testimony Government's Jury
 Description Testimony Verdict
 Campbell Landowner $11,500 $14,525
 Tract 113 $34,000$35,000 (II App. 33) (I App.
 7a)
1 1/2 -story frame (II App. 76, 81)
 dwelling, shed, barn
 and outbuilding on 6.38
 acres
 V. McFadden (appraiser)
 $25,000
 (II App. 91)
 J. Nash (appraiser)
 $26,500
 (II App. 107)
 Schild Landowner $ 7,000 $ 8,550
 Tract 114 $25,000 (II App. 50) (I App.
 9a)
1 1/2 -story cabin, shed, (II App. 125)
 outhouse and chicken
 house on 2.04 acres
 J. J. Lavelle (appraiser)
 $12,500
 (II App. 132)
 V. McFadden (appraiser)
 $12,000
 (II App. 143)
 Lawrence Landowner $ 6,000 $ 8,850
 Tract 637 $12,500 (III App. 36) (I App.
 13a)
1-story concrete block (III App. 91)
 dwelling, garage,
 woodshed and privy on
 0.42 acre
 J. J. Lavelle (appraiser)
 $11,500
 (III App. 104)
 McFarquhar Landowner $11,000 $15,000
 Tract 618 $55,000 (III App. 69) (I App.
 11a)
1-story frame cabin, (III App. 137)
 garage and privy on
 0.66 acre
 H. H. Myers (appraiser)
 $22,000
 (III App. 160)
 Stine Landowner $ 8,800 $11,000
 Tract 621 $24,000$25,000 (IV App. 116) (I App.
 14a)
1-story frame cabin and (IV App. 21)
 privy on 1.53 acres
 V. McFadden (appraiser)
 $21,000
 (IV App. 35)
 J. W. Davis (appraiser)
 $22,500
 (IV App. 57)
 
 
 9
 Rule 71A(b), F.R.Civil P., provides that the condemnor may join in the same action "one or more separate pieces of property, whether in the same or different ownership and whether or not sought for the same use." This rule permits condemnation proceedings against owners of separate parcels which may be consolidated for trial as determined by the trial court in the exercise of its sound discretion.[7]
 
 
 10
 The three separate jury trials did not present any complex problems. We accept the language used in Appellee's brief as pertinent.[8]
 
 
 11
 In condemnation proceedings different tracts of land may be grouped together for trial purposes, and each landowner cannot have a separate trial unless he shows exceptional circumstances applicable only to his land. Barron & Holtzoff, (Wright, Ed.) Vol. 2B. Sec. 944 p. 198.
 
 
 12
 Appellants' contention that each of these properties condemned should have been separated for trial is answered in Phelps Dodge Corporation v. Atchison, T. and S. F. R. Co., 400 F.2d 20 (10th Cir. 1968).[9]
 
 
 13
 "The claim that these cases should have been separated for trial runs contrary to generally accepted procedural practice and thus imposes upon appellants in this court a very heavy burden of persuasion that the trial court clearly abused its discretion in refusing to depart from such practice. We are not so persuaded." 400 F.2d at 21.
 
 
 14
 Appellants contend that the trial court's refusal to allow them to depose Orbaker was substantially prejudicial.[10] The record does not sustain this argument.
 
 
 15
 The district court judge was acting within his sound discretion when he granted the Government's motion to quash the subpoena. The judge determined that the subpoena was "very late" and to permit the taking of the deposition would have unduly delayed the trial.[11] Moreover, even if the subpoena had been served in a timely manner, the appellants would not have been entitled to depose Mr. Orbaker. Since the judge's order was entered prior to July 1, 1970, amended Rule 26(b) was not yet in effect.[12] Under the rule prior to the amendment, the law was generally to the effect that, without a showing of good cause, discovery of the opinions of experts was not permitted in condemnation cases.[13] There was no showing of "good cause" for deposing Mr. Orbaker. The parties not only agreed to exchange lists of comparable sales which they intended to use but they did in fact exchange such comparables prior to trial.[14] Once the appellants obtained the comparable sales data, they were in an excellent position to prepare for cross-examination of Orbaker.
 
 
 16
 The owner of property taken for public use must receive just compensation. When we speak of just compensation, we have in mind a dollar figure which will be fair and just, not only to the property owner, but also to the condemning authority. The measure of that compensation is the fair market value as of the date of taking. One of the methods used by experts to determine fair market value is extrapolation from what has been agreeable between a willing seller and a willing buyer in a comparable sale, in which neither party was under any compulsion. These comparables serve as independent evidence of value. They also can be used to support or challenge the credibility of an expert's opinion of the value of a particular piece of property.
 
 
 17
 The jury, which can consider these comparables in evaluating the estimate given by an expert, is under no obligation to accept as completely true the testimony of any expert witness. It may adopt as much of the testimony as appears sound, reject all of it, or adopt all of it. The jury performed that function in these cases.
 
 
 18
 An examination of the record in this case reveals that the counsel for appellants cross-examined Orbaker at length and had full opportunity to challenge the relevance of the comparables he used in arriving at his estimates of value. Since appellants had previously obtained the list of comparables Orbaker relied upon at trial they were not surprised by his testimony.
 
 
 19
 The district court judge also exercised sound discretion in refusing to permit into evidence Orbaker's contract with the Government as an appraiser for the entire Beltzville project. In addition he properly refused appellants' request to cross-examine Orbaker as to the amount received for the appraisal work. He investigated 300 properties and appraised 187 properties. Appellants argue that they had a right to examine Orbaker as to his compensation for the entire project to show interest or bias. Assuming that the evidence was admissible for the purpose of showing interest or bias of the witness, a trial judge may in his discretion exclude evidence if he finds that its probative value is substantially outweighed by the risk that its admission will create substantial danger of undue prejudice, will confuse the issues, or mislead the jury. United States v. American Radiator & Standard Sanitary Corp., 433 F.2d 174, 203 (3rd Cir. 1970), cert. denied 401 U.S. 948, 91 S.Ct. 929, 28 L.Ed.2d 231 (1971).
 
 
 20
 The contract to prepare appraisals for the entire project was not material or relevant to the issue of just compensation for the properties condemned. However, the court did properly permit the introduction of Orbaker's per diem fee for testifying in order to show his possible bias or interest.[15] In a condemnation proceeding, questions regarding admissibility of evidence are left to the discretion of the trial court. United States v. 5139.5 Acres of Land, etc., 200 F.2d 659, 661 (4th Cir. 1952).[16]
 
 
 21
 We have examined the entire record and are satisfied that the trial judge did not abuse his discretion.
 
 
 22
 The judgments are affirmed.
 
 
 
 [1]
 Appellants in No. 17,730
 
 
 [2]
 Appellants in No. 17,731
 
 
 [3]
 Appellants in No. 17,732
 
 
 [4]
 Appellants in No. 17,733
 
 
 [5]
 Appellants in No. 18,246
 
 
 [6]
 Order denying separate trials dated October 28, 1968; Appellants' App. Vol. 1, P 5(a)
 
 
 [7]
 Under Rule 71A(h) the trial judge has discretion in determining whether the case should be heard by a jury or a commission of three persons. Rule 18 provides for liberal joinder of claims and remedies and is applicable to condemnation procedure. Rule 42 permits consolidation of causes or separate trials depending upon the facts in a given situation
 
 
 [8]
 "We are at a loss to understand the alleged complexities where experts were able to appraise a property either without personally examining the property (II App. 108 et seq.) but merely upon the basis of a Sunday conference in counsel's office (II App. 133 et seq.; III App. 103 et seq.) and in another case without going inside the subject premises (III App. 165). Another expert conceded that he had never seen the subject property, condemned two years earlier, until a few days before trial; was never inside the property; and that two of the three comparables upon which he relied he never even confirmed" (IV App. 61-62.) Appellee's brief p. 7
 
 
 [9]
 We do not accept the dictum in United States v. 186.82 Acres, 207 F.Supp. 395, 397 (W.D.Pa.1962) wherein it is stated that:
 "Each of the owners would be entitled to a separate jury trial as to his property if the issue of just compensation were to be decided by a jury."
 Gwathmey v. United States, 215 F.2d 148 (5th Cir. 1954) relied upon by appellants, is inapposite. In Gwathmey there were originally 933 separate tracts and ultimately 236 separate verdicts. This case was tried before one jury. The court stated:
 "Whether or not there has been an abuse of discretion, whether or not there has been a denial of due process, are questions which turn on the circumstances of each case." p. 157.
 The very size of the Gwathmey case, the nature of the testimony, and the number of tracts involved created much confusion at trial. This is not the factual situation presented in the instant case.
 
 
 [10]
 The appellants served a subpoena on Mr. Orbaker requiring him to appear for oral deposition. After the Government argued its objections, the court quashed the subpoena and denied appellants the right to depose Orbaker
 
 
 [11]
 IV App. 81
 
 
 [12]
 In commenting on the 1970 amendment, one authority has written, "In view of all that can be said, however, for treating expert information like any other information, and the strong trend in this direction, it is surprising that the amendment does not go farther" in expanding discovery of expert information. Wright & Miller, Federal Practice and Procedure: Civil, Vol. 8 Sec. 2029 p. 250. Whether the amended rule will produce a result in future cases which is different from that which we reach here need not be determined at this time
 
 
 [13]
 The extent to which facts known and opinions held by experts were discoverable under the federal rules was the subject of much discussion and division in the federal courts prior to the amendment to the rules promulgated in 1970. See Wright & Miller, op. cit. Sec. 2029. Even where discovery was allowed, some courts did so only on a finding of compelling circumstances. Levine v. St. Luke's Hosp., 47 F.R.D. 362 (E.D.Pa.1969). Others drew a distinction between facts and opinions or conclusions, allowing discovery of the former but denying it with respect to the latter. Walsh v. Reynolds Metals Co., 15 F.R.D. 376 (N.J.1954). In some cases the distinction between fact and conclusion was unhesitatingly rejected. U. S. v. Meyer, 398 F.2d 66 (9th Cir. 1968)
 
 
 [14]
 IV App. 82-83
 
 
 [15]
 (II App. 159; III App. 39; IV App. 131-132)
 
 
 [16]
 Cf. Russell v. Monongahela Railway Co., 262 F.2d 349, 353 (3rd Cir. 1953)