**UNITED STATES of America, Appellee,**

v.

**494.10 ACRES OF LAND IN COWLEY COUNTY, KANSAS, Robert L. Wilson, and the Union State Bank, Arkansas City, Kansas, et al., Appellants.**

Nos. 77–2076, 77–2077.

United States Court of Appeals,
Tenth Circuit.

Submitted Oct. 25, 1978.

Decided Feb. 5, 1979.

George E. Sybrant, Arkansas City, Kan., for appellants.

Raymond N. Zagone, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Washington, D. C., James P. Buchele, U. S. Atty., Topeka, Kan., Jacques B. Gelin and Neil T. Proto, Attys., Dept. of Justice, Washington, D. C., on the brief), for appellee.

Before SETH, Chief Judge, and McWILLIAMS and DOYLE, Circuit Judges.

SETH, Chief Judge.

This condemnation proceeding was instituted by the United States for the acquisition of land for the Kaw Lake Project as part of a plan for flood control in the Arkansas River Basin. A commission appointed by the district court under Fed.R.Civ.P. 71A(h) made an award to the appellants. This report was adopted by the court, the objections of the landowners overruled, and judgment was entered based on the report. On appeal, the appellants contend the commission erred in refusing to assign any value to the sand and gravel underlying their property.

The defendants-appellants, Robert L. Wilson and Duana Wilson, owned two tracts which were condemned, one No. 1822 consisting of about 125 acres, and No. 1822E of about 1.25 acres. The Union State Bank, an appellant, owned a 29-acre tract designated in the condemnation as No. 1827, which was also acquired by the United States. The appeal of the bank in our No. 77–2077 has been consolidated for appeal with that of the Wilsons, No. 77–2076. The basic issue on appeal as to the three tracts, as mentioned above, concerns the deposits of sand and gravel underlying the lands and how this relates to the highest and best use determination made by the commission and adopted by the trial court.

In separate stipulations, the United States agreed with the Wilsons and Union State Bank that a substantial amount of sand and gravel lay under the surface of the land taken. In the Wilson stipulation it was agreed that there were 4,370,737 cubic yards under tracts 1822 and 1822E. On the Union State Bank property the parties stipulated to the quantity of 1,074,066 cubic yards of sand and gravel under tract 1827. The stipulations included a statement that the gravel was commercially producible and the going royalty was thirty cents per cubic yard.

It was agreed that the engineering and geological study and material samples of Orval W. Daniels could be considered as accurate by the commission as to all tracts "without Mr. Daniels being present to testify."

The Wilsons' classification of their land included some 22.5 acres of residential or recreational land and 134.25 separate acres for sand, gravel, industrial, and recreational use.

The bank classified all its 29.0 acres as sand, gravel, industrial, and recreational.

The commission determined that the highest and best use of the property taken was for agriculture, with some for residential development, and some for timber, pasture, and wasteland. The commission did not assign any value to the gravel deposits as such, and this, of course, is the issue on appeal.

The trial court in its memorandum and order stated the standard to be used in its review of the commission's findings. It said in part:

"The Court is directed under Rule 71A(h) to consider the findings of the Commission pursuant to F.R.Civ.P. 53(e)(2), which provides they shall be accepted unless 'clearly erroneous.' Thus, the findings of the Commission will not be set aside in any particular unless the Court is left with the firm conviction upon review of the entire record that a mistake has been committed. *United States v. 46,672.96 Acres of Land*, 521 F.2d 13 (10th Cir. 1975). This rule is especially pertinent in cases such as this where the evidence has been sharply conflicting and the Commission has had the opportunity to see and hear the witnesses as well as view the property for itself, as was done."

*See also United States v. Brinker*, 413 F.2d 733 (10th Cir.).

On this appeal we consider the findings of the trial court under Rule 52(a). *See United States v. 79.95 Acres of Land, Etc., Rogers Co., Okl.*, 459 F.2d 185 (10th Cir.), and cases therein cited. The commission was properly instructed, it held evidentiary hearings, observed the demeanor of the witnesses, it viewed the property, filed a report which reviewed and evaluated the evidence, made a determination of credibility, and made awards within the scope of the evidence. *United States v. Merz*, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629; *United States v. 811.92 Acres of Land, Etc.*, 404 F.2d 303 (6th Cir.). As we have repeatedly said we will not reweigh the evidence, and will accept findings derived from conflicting evidence. *Wilson v. United States*, 350 F.2d 901 (10th Cir.). Obviously the findings must be supported by substantial evidence and the awards arrived at in accordance with the correct application of the law. *United States v. 46,672.96 Acres of Land, Etc.*, 521 F.2d 13 (10th Cir.).

Fair market value at time of taking or just compensation is the determination to

be made. In *United States v. 45,131.44 Acres of Land, Etc.*, 483 F.2d 569 (10th Cir.), we defined fair market value as: "Fair market value of property is what an owner willing but not compelled to sell will take and what a buyer willing but not compelled to buy will give for such property, . . ." and cited *United States v. Silver Queen Mining Co.*, 285 F.2d 506 (10th Cir.). *See also United States v. Miller*, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336. This value at an arm-length transaction for the land in issue is, of course, accumulated by examination of comparable sales. This is the typical proof, and this was part of the proof here. The burden is on the owner to establish by competent evidence the compensation to which he is entitled. *United States v. Sowards*, 370 F.2d 87 (10th Cir.).

The willing buyer and seller standard is represented by comparable transactions as a method of proof. The parties to such transactions are presumed to have taken into consideration all the elements of value to be attributed to the land. The Supreme Court in *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, stated:

> ". . . In respect of each item of property that value may be deemed to be the sum which, considering all the circumstances, could have been obtained for it; that is, the amount that in all probability would have been arrived at by fair negotiations between an owner willing to sell and a purchaser desiring to buy."

The Court then continued and stated that all the elements should be considered which such a buyer and seller might bring forward ". . . and reasonably be given substantial weight in such bargaining."

In *United States v. 46,672.96 Acres of Land, Etc.*, 521 F.2d 13 (10th Cir.), we said:

> "Highest and best use contemplates a present existing use or one reasonably likely to take place in the near future, whereby availability of this future use would have affected the market price."

This quotation indicates the time aspect of future use, and its relation to present market price. The "reasonably likely to take place in the near future" element of use is significant here. It is apparent that if the "future" is beyond or very much beyond the "near future," the use becomes speculative. The commission here concluded that ". . . the present and future demand for sand and gravel is highly speculative, uncertain, and not established, . . ." The Supreme Court in *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236, said:

> ". . . The highest and most profitable use for which the property is adaptable and needed or likely to be needed in the reasonably near future is to be considered, not necessarily as the measure of value, but to the full extent that the prospect of demand for such use affects the market value while the property is privately held."

The commission considered the demand and the supply of gravel in determining the highest and best use. This was in accordance with *Olson v. United States*. The record thus demonstrates that the sand and gravel potential was fully considered and evaluated. The trial court stated:

> "Nor can we say that as a matter of law the Commission's finding that there was not such a demand for sand and gravel that its presence on the Wilson land should be calculated in making a valuation."

Thus the court considered demand to be a disputed issue of fact, and we must agree.

The witness Oakes testified at some length as to the potential of the land. On this issue perhaps the most significant part of his testimony related to the sale and purchase of comparable farms. He testified in part that ". . . it's very unusual if anyone will pay more than farmland prices for land containing such deposits because farmland is available with it." Thus he testified that if sand and gravel is wanted all that need be done is to buy a farm in this area for a farm price. This, of course, indicates something as to the demand, the supply, and demonstrates that the worth of the sand and gravel is in the farm price. With the willing buyer and willing seller standard, the value of the

farmland with the sand and gravel has been arrived at. All the elements of value in the tracts have thus been considered within reasonable possibilities.

We must conclude that the trial court applied the proper legal standards as to the elements of value, and that the commission valuation is also well within the testimony.

The parties have raised several issues which we have considered, but which need not be discussed.

AFFIRMED.