**UNITED STATES of America, Plaintiff-Appellant,**

v.

**77,819.10 ACRES OF LAND, MORE OR LESS, SITUATE IN SOCORRO AND CATRON COUNTIES, NEW MEXICO; Jay Taylor a/k/a Jay L. Taylor and Imogene H. Taylor a/k/a Imogene Herring Taylor, his wife; The State of New Mexico by Commissioner of Public Lands, Defendants-Appellees.**

**Nos. 79–2087, 79–2270.**

United States Court of Appeals, Tenth Circuit.

Argued Jan. 29, 1981.

Decided April 8, 1981.

Rehearing Denied Aug. 10, 1981.

David C. Shilton, Atty., Dept. of Justice, Washington, D. C. (James W. Moorman, Asst. Atty. Gen., Edward Shawaker, Atty., Dept. of Justice, Washington, D. C., and R. E. Thompson, U. S. Atty. and James B. Grant, Asst. U. S. Atty., Albuquerque, N. M., with him on the brief), for plaintiff-appellant.

Robert D. Taichert of Rodey, Dickason, Sloan, Akin & Robb, Albuquerque, N. M., for defendants-appellees Jay Taylor and Imogene H. Taylor.

William O. Jordan, Atty. for the Commissioner of Public Lands for the State of New Mexico, Santa Fe, N. M., for defendant-appellee The State of New Mexico.

Before HOLLOWAY, BARRETT and WILLIAM E. DOYLE, Circuit Judges.

BARRETT, Circuit Judge.

The United States appeals an award made by a commission and adopted by the district court pursuant to a condemnation proceeding for the taking of an evacuation estate[1] to be used in connection with the Athena H Missile project at the White Sands Missile Range in New Mexico. The commission appointed by the Court under Fed.Rules Civ.Proc. rule 71A(h), 28 U.S.C.A. awarded landowners, Jay Taylor and Imogene Taylor (Taylors) and the State of New Mexico (State), $33,735 and $4,237.25, respectively, and the Court entered judgment based upon the commission's report. This Court's jurisdiction rests on 28 U.S.C.A. § 1291.

*Factual Background*

The facts are not in dispute. The United States filed complaints in 1972 and 1973 taking two successive evacuation estates over 77,810.10 acres of land, more or less, contained within the Taylor ranch. The duration of the taking totaled 13 months. The Taylors used the land for grazing cattle. They owned approximately 58,131 of the acres involved and leased another 19,949.99 acres from the State. The State, in granting the Taylors the grazing lease, reserved all other interests in the land, including but not limited to, granting easements for hunting, fishing, water wells, signs and rights of way.

Mr. Taylor testified concerning a 1963 evacuation agreement with the government in connection with another missile overflight project. He described the disruptive effects prior missile overflights had on his ranch operation, as, "damage to property caused by boosters and other metal debris hitting the ground, helicopters scaring cattle, loss of weight to the cattle, calves becoming lost from their mothers..." [R., Vol. I, p. 61]. Taylor related the terms of the prior agreement, including the price paid, $28,000.00.

Taylor's expert witness, Charles Crowder (Crowder) was not an expert appraiser, per se; however, the commission determined he was sufficiently qualified to render an opinion pursuant to Fed.Rules Evid. Rule 702, 28 U.S.C.A. Crowder testified that if he were to lease the Taylor ranch, he would discount the rent by at least 50% to adjust for the taking.

The State's expert witness, Lincoln McTieg (McTieg), was an appraiser with the New Mexico Land Office. McTieg appraised the State's reserved interests and determined that the fair annual rental value would be reduced by $1.00 per acre.

The Commission admitted into evidence the State's Exhibit Z to show "the entire

---

1. An evacuation estate is an interest in land enabling the condemnor to require occupants to periodically vacate the land. Here, the United States could require the occupants to leave for periods not exceeding 12 hours, with at least 10 days' notice.

project area and Taylor ranch in juxtaposition to that area." [R., Vol. III, p. 124]. The United States had no objection to the exhibit's admission "if it's only for that purpose, not because we feel it's relevant." [R., Vol. III, p. 124].

The government's witness, Tye Terrell (Terrell), a farm and ranch appraiser employed by the Corps of Engineers, testified that the dimunition in fair rental value of the Taylor ranch would be approximately $700.00,[2] after analyzing purportedly comparable unencumbered ranches and comparable ranches encumbered by similar projects. [R., Vol. I, pp. 64–65].

### Commission Findings

The commission found the highest and best use of the Taylor ranch to be for grazing and ranching except for the state-owned tracts which were found to have a remaining highest and best use for water wells, water easements and easements of access.

With respect to the Taylors, the commission concluded the best method for computing the fair market value of the ranch taken was to "determine the last fair rental value of the tract to be taken based upon a fair rental value per animal approach." [R., Vol. I, p. 66]. It was uncontested that 13,494 animal unit months were involved for the 13-month period.

The commission was generally unimpressed with the unencumbered comparables offered by the United States as either being remote in time, distant in location or involving different lease factors. Likewise, the commission was not impressed with the encumbered lease comparables presented by the United States because too many undisclosed factors would have to be considered for each lease. The commission, however, found one unencumbered comparable to be the "closest reasonable figure" [R., Vol. I, p.

66] at $5.33 per animal unit month, and adjusted the figure downward to $5.00 per animal unit month to account for a different time period and lease term.

The commission found Crowder's testimony regarding the 50% discount applied to overflight encumbered property to be impressive. After applying the 50% discount to the unencumbered monthly rental of $5.00 per animal unit month, the commission found $2.50 to be the fair rental value of the Taylor ranch immediately after the taking. Multiplying $2.50 per animal unit month by 13,494 animal units for 13 months, the commission arrived at $33,735 as the Taylors' fair rental loss resulting from the taking.

With respect to the State, the commission found that the fair rental value of all the tracts was not diminished with the exception of certain designated tracts set forth below. The commission concluded that it was "highly speculative that any of these tracts of land would suffer damage with respect to signing, hunting and fishing, water wells, water easements or right of way potential, particularly when one views the plat offered by the Commissioner of Public Lands of New Mexico as Exhibit Z." [R., Vol. I, p. 65]. Even so, the commission noted with respect to the State property platted in Exhibit Z "that the only major contiguous portions [to other State lands] of Parcel 2 occurred in Township 1 North, Range 8 West, in Township 1 South, Range 9 West and in Township 1 South, Range 8 West." [R., Vol. I, p. 64]. The commission then found clear potential for right of way easements and water well easements "from this plat in the land of the Commissioner," [R., Vol. I, p. 64] and was of the opinion that more than one highest and best use was available for these tracts. The commission determined that the $1.00 per acre reduction in fair rental value was too high and that a dimunition in value of 25 cents

2. $3.35 per animal unit month [unencumbered fair rental value]
−3.30 per animal unit month [encumbered fair rental value]
.05 dimunition in animal unit months

.05 times 13,494 animal units for 13 months equals approximately $700.00.

per acre was more realistic. The commission reported that "an examination of New Mexico Exhibit Z and Mr. McTieg's testimony supports this conclusion." [R., Vol. I, p. 66]. However, the commission was unable to reach a final award because "insufficient information was presented to the commission to develop the total number of acres within these townships and ranches and this commission recommends further proceedings before the District Court to determine the actual acreage." [R., Vol. I, p. 66].[3] The district court rejected the Government's objections to the commission's report and entered judgment.

### Appellate Contentions

On appeal, the Government contends that: (1) the commission erred in relying on speculative testimony and inadmissible evidence in awarding Taylor damages; and (2) the evidence was insufficient to support an award to the State.

### I.

#### A. Speculative Testimony

The United States claims the testimony of the Taylor's expert witness, Crowder, was speculative and that the commission erred in relying on it.

■ The commission found Crowder was not titled as an expert appraiser; however, it was determined that he was qualified to give an expert opinion regarding the diminution in value missile overflights have on ranches, based upon his skill and experience pursuant to Rule 702, *supra.* The trial court is allowed wide discretion in passing on matters relating to expert testimony in condemnation cases. *United States v. 25.02 Acres of Land, More or Less in Douglas County,* 495 F.2d 1398 (10th Cir. 1974).

■ Crowder testified that he had very successfully participated in sales of over 3 million acres of ranch property in New Mexico, either individually or corporately

and always as a principal. He never used an appraiser; rather, he valued the land himself. In addition, Crowder stated that he was familiar with the Taylor ranch from past business experience and because he had a ranch nearby. In *Phelps v. Atchison, Topeka and Santa Fe R.R. Co.,* 400 F.2d 20 (10th Cir. 1968), this Court held that the trial court properly admitted testimony of an expert witness who had experience as a cattle ranch manager in the area, was familiar with ranch sales in the area and had inspected the ranch property taken. Qualified and knowledgeable witnesses may give their opinion or estimate of the value of the property taken, but to have probative value the opinion must have a rational foundation. *United States v. Sowards,* 370 F.2d 87 (10th Cir. 1966) (citing cases). Clearly, this foundation existed.

■ It is permissible for an expert witness to arrive at his opinion in a way that any man of intelligence would have arrived at a valuation of the property for ordinary business purposes. *United States v. 97.19 Acres of Land More or Less,* 582 F.2d 878 (10th Cir. 1978).

■ We hold that Crowder's conclusion that the fair rental value of the Taylor ranch would diminish by 50% after the taking was intelligently and rationally founded and not impermissibly speculative. Commission findings will not be set aside unless the court is left with the firm conviction upon review that a mistake has been committed. *United States v. 494.10 Acres of Land in Cowley County,* 592 F.2d 1130 (10th Cir. 1979); *United States v. 46,672.96 Acres of Land,* 521 F.2d 13 (10th Cir. 1975). Commission reliance on Crowder's testimony was justified and proper.

#### B. Inadmissible Evidence

The United States argues that error was committed when the commission allowed Taylor's testimony about the price paid to him by the United States for a prior similar agreement.

---

**3.** Parties stipulated later that 16,949.99 acres were involved, resulting in an award to the State of $4,237.25.

The burden rests upon the owner to establish by competent evidence his right to substantial compensation. *United States v. 25.02 Acres of Land, supra.* We have held that while the best evidence of market value is found in sales of comparable property, the determination is not limited to that consideration and other substantial facts and circumstances may have probative value. *United States v. 45,131.44 Acres of Land,* 483 F.2d 569 (10th Cir. 1973); *United States v. Sowards, supra; United States v. 25.02 Acres of Land, supra.*

During Taylor's testimony before the commission regarding the prior disruptive effects missile overflights had on his ranch operation, he referred to the sum of $28,000 paid to him by the United States for the earlier encumbrance. The United States contends this was prejudicial because, according to the calculations of the United States, one arrives at the commission's award of $33,735.00 by adjusting $28,000 for a longer term plus inflation.

This argument is utterly without merit. *Nowhere* in the commission's findings with respect to award calculations can we find any mention of $28,000.00, much less any extrapolations to $28,000 for inflation or longer lease terms.

The commission detailed the process it used to arrive at Taylor's award and in fact relied on a comparable found in a chart of comparables offered by the Government in its Exhibit 4. The commission found "that the figure $5.33 price per animal unit month listed in comparable 1 U is the closest reasonable figure for unencumbered comparables except that it should be adjusted downward to $5.00 per animal unit due to the different period of time and lease term." [R., Vol. I, p. 66]. The commission proceeded to adjust the unencumbered monthly rental using Crowder's 50% discount to arrive at $2.50 per animal unit month as the fair rental value at the time of the taking.

Commissioners must, of necessity, consider all relevant evidence in the process of creating a record from which we can extract findings which must be supported by substance rather than conclusion. *United States v. Merz,* 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964); *Caporal v. United States,* 577 F.2d 113 (10th Cir. 1978). The admitted prior agreement price was clearly irrelevant to the path followed by the commission. It was disregarded by the commission as comparable evidence. Thus, the Taylor testimony relative to payment to him under a prior evacuation agreement of $28,000 was not clearly erroneous. *United States v. Corbin,* 423 F.2d 821 (10th Cir. 1970). The report does not demonstrate commission reliance on the $28,000 payment. We find no indication in the report that it was considered as an element upon which the award was based. Accordingly, we affirm the award to the Taylors.

## II.

The United States contends that there was insufficient evidence to support any award to the State.

The test of whether the trial court has committed reversible error in adopting the award of a commission is whether the award is clearly erroneous, based upon misapplication of law, unsupported by the evidence or contrary to the clear weight of the evidence. *United States v. 79.95 Acres of Land,* 459 F.2d 185 (10th Cir. 1972). For the reasons set forth below we find the trial court's adoption of the commission award to be clearly erroneous and unsupported by the evidence.

In finding a 25 cent per acre diminution in fair rental value for the State's reserved interests in the leased land, the commission declared that "an examination of New Mexico's Exhibit Z and Mr. McTieg's testimony" [R., Vol. I, p. 66] supported its conclusion. Exhibit Z was admitted *only* to show the "entire project area and Taylor ranch in juxtaposition to that area." [R., Vol. III, p. 124]. The Government did not object to the exhibit's use for that purpose. However, the commission did not limit the exhibit's use to that purpose; and instead, it was used as a basis to support the commission's conclusion that tracts of state land had a remaining highest and

best use for granting easements. The commission's reliance on Exhibit Z as support for this conclusion was clearly erroneous.

■ The commission then directed the District Court to determine the actual acreage involved in the tracts purportedly designated as having a remaining highest and best use. The Court subsequently found 16,945.99 acres to be taken after requesting the parties to resolve the acreage question by stipulation. After careful review of Exhibit Z, we conclude that only some 1600 acres could have been considered by the commission as having clear potential for easements. Even that conclusion is guesswork. There exists a discrepancy of over 15,000 acres between the stipulated acreage and the three tracts designated by the commission. Accordingly, there is no competent evidence in support of the award to the State.

■ A landowner is entitled to have the market value of his property determined by reference to the highest and best use for which it is available. *United States v. 91.90 Acres of Land*, 586 F.2d 79 (8th Cir. 1978), *cert. denied*, 441 U.S. 944, 99 S.Ct. 2162, 60 L.Ed.2d 1045 (1979). Ordinarily the highest and best use for property condemned is the use to which it is subjected at the time of the taking. However, the courts recognize that there may be circumstances that require a finding that another highest and best use exists. *United States v. Buhler*, 305 F.2d 319 (5th Cir. 1962).

■ The State claims that the land leased to the Taylors for grazing had a remaining highest and best use for the granting of easements. The standard applicable to determine whether the owner has demonstrated an alternative highest and best use is whether there is a reasonable probability that the land is physically adaptable for such use and whether there is a need or demand for such use in the reasonably near future. *Olson v. United States*, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236 (1934); *United States v. 341.45 Acres of Land*, 633 F.2d 108 (8th Cir. 1980). The State's expert witness, McTieg, could not recollect any requests for use of these State reserved interests on the Taylor ranch

which were denied because of the Government's taking. Furthermore, McTieg could not demonstrate any future requests for the easements. The plat, Exhibit Z, which the commission based part of its conclusion on, was offered only to show the relationship between State-leased land and Taylor's fee land. It was simply insufficient to demonstrate a reasonably probable future use for easements.

■ It is established that not every deprivation of use, possession or control is a taking. *Sun Oil v. United States*, 572 F.2d 786 (Ct.Cl.1978); *Finks v. United States*, 395 F.2d 999, *cert. denied*, 393 U.S. 960, 89 S.Ct. 398, 21 L.Ed.2d 374 (1968). The burden rests on the owner to establish by competent evidence the compensation to which he is due. *United States v. 494.10 Acres of Land, supra; Sowards, supra.*

■ We must conclude following our review of the record that the State failed to meet its burden of establishing with reasonable probability that an alternative highest and best use existed. Accordingly, we must reverse the award rendered on behalf of the State in that it was clearly erroneous and unsupported by the evidence.

We affirm in part and reverse in part.