**UNITED STATES of America,**
**Appellant,**

v.

**Leland SOWARDS and Ruth Sowards, his wife, Sarah P. Gibson and J. Lambert Gibson, trustees under the will of J. L. Gibson, deceased, Sarah Adelia Gibson Eccles, W. Carl Sowards and Florence Sowards, his wife, Shirley G. Sowards and Jean Sowards, his wife, Mary L. Underwood, Orval L. Sowards, Vaughn C. Sowards et al., Appellees.**

**No. 8680.**

United States Court of Appeals
Tenth Circuit.

Dec. 19, 1966.

George R. Hyde, Attorney, Department of Justice, Washington, D. C. (Edwin L. Weisl, Jr., Asst. Atty. Gen., William T. Thurman, U. S. Atty., Salt Lake City, Utah, and Roger P. Marquis, Attorney, Department of Justice, Washington, D. C., on the brief), for appellant.

J. Lambert Gibson, Salt Lake City, Utah, for appellees.

Before PICKETT and HICKEY, Circuit Judges, and BRATTON, United States District Judge.

PICKETT, Circuit Judge.

The United States initiated this action in the United States District Court for the District of Utah to condemn the "coal, coal mines and workings" con-

tained in and on 18.18 acres of land in Uintah County, Utah, the surface rights to which the United States had already acquired by negotiated purchase. The issue of just compensation for the coal interests was previously tried to a jury, but the judgment entered on the verdict was reversed and the case remanded for a new trial. United States v. Sowards, 10 Cir., 339 F.2d 401. Throughout, the United States has claimed that the condemned property had little or no value and that the coal deposit was not marketable at any price. The evidence is without dispute that there were approximately 41,000 tons of coal in place. There being no competent evidence of any recent comparable sales in the area, resort was had to other data in an attempt to fix the market value of the property. The landowner testified that in his opinion the coal was worth at least $1.00 per ton in place. The only valuation testimony thereafter admitted in evidence was that of a government expert who, on the basis of his study, fixed the fair market value of the coal taken at $1,000. The landowner also stated there was a severance damage to his remaining coal deposit. The jury determined just compensation for the coal taken to be $32,270, and $5,000 in severance damage. The United States appeals from the judgment entered thereon, asserting that there was no competent evidence to support the verdict.

The Fifth Amendment to the United States Constitution provides that private property shall not be taken for public use without just compensation. The sovereign must place the owner in as good a position pecuniarily as he would have been had his property not been taken. The constitutional requirement extends only to the property taken, and not to the opportunities which the owner may lose. United States ex rel. and for Use of T. V. A. v. Powelson, 319 U.S. 266, 63 S.Ct. 1047, 87 L.Ed. 1390; United States v. Cox, 10 Cir., 190 F.2d 293, cert. denied 342 U.S. 867, 72 S.Ct. 107, 96 L.Ed. 652. Just compensation is measured by the market value of the property at the time of taking. United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, reh. denied 318 U.S. 798, 63 S.Ct. 557, 87 L.Ed. 1162; Olson v. United States, 292 U.S. 246, 54 S.Ct. 704, 78 L.Ed. 1236; United States v. Featherston, 10 Cir., 325 F.2d 539; Harwell v. United States, 10 Cir., 316 F.2d 791; United States v. Silver Queen Mining Co., 10 Cir., 285 F.2d 506; 27 Am. Jur.2d, Eminent Domain § 267. The federal concept of market value is intimately related to selling price on the market, and it is generally recognized that the best evidence of market value is found in sales of comparable property within a reasonable time before taking; but the determination is not limited to that method. United States v. Toronto Hamilton & Buffalo Nav. Co., 338 U.S. 396, 70 S.Ct. 217, 94 L.Ed. 195; United States v. Miller, supra; United States v. Sowards, supra; Harwell v. United States, supra; Onego Corp. v. United States, 10 Cir., 295 F.2d 461; United States v. Silver Queen Mining Co., supra.

In recognizing the difficulties of establishing market value in cases where there are no comparable sales, the Supreme Court, in United States v. Miller, supra 317 U.S. at 374, 375, 63 S.Ct. at 280, stated:

"Where, for any reason, property has no market resort must be had to other data to ascertain its value; and, even in the ordinary case, assessment of market value involves the use of assumptions, which make it unlikely that the appraisal will reflect true value with nicety. It is usually said that market value is what a willing buyer would pay in cash to a willing seller. Where the property taken, and that in its vicinity, has not in fact been sold within recent times, or in significant amounts, the application of this concept involves, at best, a guess by informed persons.

Again, strict adherence to the criterion of market value may involve inclusion of elements which, though they affect such value, must in fairness be eliminated in a condemnation

case, as where the formula is attempted to be applied as between an owner who may not want to part with his land because of its special adaptability to his own use, and a taker who needs the land because of its peculiar fitness for the taker's purposes. These elements must be disregarded by the fact finding body in arriving at 'fair' market value." (Footnote omitted)

And we stated in Sill Corp. v. United States, 10 Cir., 343 F.2d 411, 416, cert. denied 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81:

"We know, of course, that the law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation. See: United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L. Ed. 336; and United States of America v. Sowards et al. (10 C.A.), 339 F. 2d 401. It may be based upon comparable sales, reproduction costs, capitalization of net income, or an interaction of these determinants."

But, whatever method is employed, the evidence offered must have a bearing upon what a willing buyer would pay a willing seller for the property on the date of the taking. Considerations that may not reasonably be held to affect market value are excluded. Olson v. United States, supra. The lack of comparable sales does not change the measure of compensation; other evidence may be sufficient for the determination of value. United States v. Toronto Hamilton & Buffalo Nav. Co., supra; Kimball Laundry Co. v. United States, 338 U.S. 1, 69 S.Ct. 1434, 93 L.Ed. 1765; United States v. Silver Queen Mining Co., supra. The law of evidence in federal courts favors a broad rule of admissibility and is designed to permit the admission of all evidence which is relevant and material to the issues in controversy, unless there is a sound and practical reason for excluding it. Rule 43(a), F.R.Civ.P.; United States v. 60.14 Acres of Land, 3 Cir., 362 F.2d 660; United States v. Featherston, supra. It should also be noted that evidence of comparable sales

is admissible either as direct proof of value or in support of the opinion of an expert, United States v. Featherston, supra, and, while an important factor in the determination of market value, does not affect the admissibility of other relevant evidence on the question.

█ While the amount of coal in place is important in arriving at an opinion as to market value, the courts have generally held that the tonnage multiplied by unit price is a deviation from the proper standard of valuation at the time of taking, because the result is based upon speculation as to the continuing existence of a theoretical future market. Mills v. United States, 8 Cir., 363 F.2d 78; Georgia Kaolin Co. v. United States, 5 Cir., 214 F.2d 284, cert. denied 348 U.S. 914, 75 S.Ct. 294, 99 L.Ed. 716. In United States ex rel. TVA v. Indian Creek Marble Co., (E.D.Tenn.), 40 F.Supp. 811, 822, the court explained the rule as follows:

"Fixing just compensation for land taken by multiplying the number of cubic feet or yards or tons by a given price per unit has met with almost uniform disapproval of the courts. This is true because such valuation involves all of the unknown and uncertain elements which enter into the operation of the business of producing and marketing the product. It assumes not only the existence, but the continued existence of a stable demand at a stable price. It assumes a stable production cost and eliminates the risks all business men know attend the steps essential to the conduct of a manufacturing enterprise. It eliminates the possible competition of better materials of the same general description and of the possible substitution of other and more desirable materials produced or possible of production by man's ingenuity, even to the extent of rendering the involved material unmarketable. It involves the assumption that human intelligence and business capacity are negligible elements in the successful conduct of business. It would require the enu-

meration of every cause of business disaster to point out the fallacy of using this method of arriving at just compensation. No man of business experience would buy property on that theory of value. True it is that quality and quantity have a place in the mind of the buyer and the seller, but the product of these multiplied by a price per unit should be rejected as indicating market value when the willing seller meets the willing buyer, assuming both to be intelligent. Values fixed by witnesses on such a basis are practically worthless, and should not be accepted. To the extent the valuation fixed by any witness contains this speculative element, to the same extent is its value as evidence reduced."

 Sowards testified that in his opinion the coal was "worth at least a dollar a ton in place, because coal of similar quality sold for $10 a ton." Upon further examination he testified that the mine had not been operated since 1918, and there had been no similar coal mined or sold in the area for years.[2] On rebuttal, Sowards gave substantially the same testimony as to value that he had previously given, with the addition of a statement relating to severance damages. He assigned as a reason for his valuation the possible demand for coal in the growing town of nearby Vernal, Utah, but there was no evidence that a market for similar coal actually existed in Vernal. As to the basis of his opinion, he testified as follows:

"Q. Am I correct in assuming that this opinion that you have is what you think—or what the property is worth to you? A. Yes.

"Q. And you have arrived at that opinion based upon some computation of dollars per ton, is that correct? A. Certainly, yes."

The owner's valuation of $1.00 per ton in place for the coal assumed that the entire 41,000 tons were recoverable and that there would be a market for it in Vernal. While it was shown that coal of better quality was marketed in Vernal, there was a total lack of evidence that any coal of similar quality had been sold there in recent years at any price. So far as the record discloses, Sowards' testimony reflected only a future hope. The mere adaptability of the coal deposit to a use does not establish a market. United States v. Mills, supra; United States v. Whitehurst, 4 Cir., 337 F.2d 765. An engineer of broad experience in coal mining was also called as a witness on behalf of the landowner, but his opinion as to value of the coal at the time of taking was excluded for lack of a proper foundation.

 Property taken by eminent domain does not involve a voluntary transfer; consequently, fair compensa-

2. The owner's testimony is regard to the mining and sale of coal in the area was as follows:

"Q. Now, you testified that this property had a value of a dollar per ton. A. Yes. That would be a conservative value to me.

Q. That would be your value of what you think it is worth to you? A. Yes, sir.

Q. Do you know any coal lands that have sold for a dollar per ton in place? A. I don't think there has been any coal mines sold there for years, because I think the mines probably are either worked out or water is in them or the vein is not what you call a good commercial vein.

Q. Do you know of any sales anywhere of coal? A. No. For that reason I think the mines don't comply with the State regulations for safety, and I have heard that they have either been mined out or they have worked way back in and water has entered the mine, so it wouldn't be feasible to work the mines.
* * *

Q. Do you know of any mines that have operated in the past years, or in and about 1962, wherein they paid a dollar a ton royalty or paid it for the purchase? A. No, sir, I wouldn't know of any royalty payment of that kind, because there wouldn't be a situation similar to that, no.

Q. You don't know of any sale or lease of any other coal property in the area? A. No, I don't.

Q. Then your figure is based upon your own opinion? A. Yes, my own—the reason—."

tion must of necessity be determined by an estimate based upon the best available criteria of value. The burden rests upon the owner to establish by competent evidence his right to substantial compensation. Wilson v. United States, 10 Cir., 350 F.2d 901; Westchester Co. Park Com. v. United States, 2 Cir., 143 F.2d 688, cert. denied 323 U.S. 726, 65 S.Ct. 59, 89 L.Ed. 583; Nichols on Eminent Domain, 3d Ed. Vol. 5, § 18.5, p. 293. Qualified and knowledgeable witnesses may give their opinion or estimate of the value of the property taken, but to have probative value, that opinion or estimate must be founded upon substantial data, not mere conjecture, speculation or unwarranted assumption. It must have a rational foundation. Mills v. United States, supra; United States v. Whitehurst, supra; United States v. Certain Interests in Property, etc., 4 Cir., 296 F.2d 264; United States v. Cooper, 5 Cir., 277 F.2d 857; United States v. 86.52 Acres of Land, etc., (W.D.Mo.), 250 F.Supp. 619; United States v. 599.86 Acres of Land, etc., (W.D.Ark.), 240 F.Supp. 563, Nichols on Eminent Domain, 3d Ed. Vol. 5, § 18.42(1), pp. 244–245, § 18.46, pp. 288–290.

 It is the general rule that an owner, because of his ownership, is presumed to have special knowledge of the property and may testify as to its value. A & A Tool & Supply Co. v. C. I. R., 10 Cir., 182 F.2d 300; Baltimore American Ins. Co. of New York v. Pecos Mercantile Co., 10 Cir., 122 F.2d 143; Kinter v. United States, 3 Cir., 156 F.2d 5; Bateman v. Donovan, 9 Cir., 131 F.2d 759; United States v. 443.6 Acres of Land, (D.C.N.D., W.D.), 77 F.Supp. 84; Nichols on Eminent Domain, 3d Ed. Vol. 5, § 18.4(2), p. 198; 32 C.J.S. Evidence § 546(116); 20 Am.Jur. Evidence, § 892. But the owner's qualification to testify does not change the "market value" concept and permit him to substitute a "value to me" standard for the accepted rule, or to establish a value based entirely upon speculation. We do not imply that in a proper case the testimony of a property owner may not

alone be sufficient to support a verdict; we merely hold that under the circumstances of this case, where the presumption of the owner's special knowledge is negated by his own testimony, his opinion has no probative value and is insufficient to sustain the award.

The United States assigns as error the refusal of the trial court to permit its expert witness to testify as to his knowledge of sales of similar coal in the area and the price paid per ton. This evidence was offered as rebuttal to the $1.00 per ton evaluation made by Sowards. The testimony should have been admitted.

Reversed and remanded for a new trial.