UNITED STATES of America,
Appellant,

v.

3,698.63 ACRES OF LAND, MORE OR
LESS, Situate IN BURLEIGH, EM-
MONS AND MORTON COUNTIES,
STATE OF NORTH DAKOTA, and An-
ton Tschida, et al., and Unknown Own-
ers.

Heirs of Herbert Lang, Deceased, Ralph
E. Lang and Walter Lang, Appellees.

UNITED STATES of America,
Appellant,

v.

2,134.46 ACRES OF LAND, MORE OR
LESS, Situate IN BURLEIGH AND
MORTON COUNTIES, STATE OF
NORTH DAKOTA and Herman Bliese,
et al., and Unknown Owners.

Alex W. MacLean, Robert B. MacLean,
William V. MacLean and Pauline
M. MacLean, Appellees.

Nos. 19562, 19563.

United States Court of Appeals
Eighth Circuit.

Oct. 7, 1969.

Rehearing Denied Oct. 30, 1969.

See also, D.C., 257 F.Supp. 723.

George R. Hyde, Attorney, Depart-
ment of Justice, Washington, D. C., for

appellant; Glen E. Taylor, Acting Asst. Atty. Gen., and Roger P. Marquis, Attorney, Dept. of Justice, Washington, D. C., and Eugene K. Anthony, U. S. Atty., Fargo, N. D., on the brief.

Robert Vogel, of Vogel, Bair & Graff, Mandan, N. D., for appellees; Robert Chesrown, Linton, N. D., on the brief.

Before MATTHES, GIBSON and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

On these appeals, we are asked to overturn jury awards in land condemnations which exceed estimates of damages submitted by qualified land appraisers but which are less than evaluations of loss as testified by owners.

The United States, as condemnor, appeals separately from two judgments entered in eminent domain proceedings relating to land taken for the Oahe Dam and Reservoir on the Missouri River. Though the dam is located north of Fort Pierre, South Dakota, the acreage taken is located in Morton County in west-central North Dakota.

In No. 19562 (Lang), the government condemned 337.83 acres of land owned by two members of the Lang family. Valuations submitted included: government, $15,700.00 and $14,590.00; land-owners' experts, $32,500.00 and $31,-450.00; owners, $43,000.00. The jury awarded $34,500.00.

In No. 19563 (MacLean), the government acquired 881.56 acres of land out of a total tract of 1,447 acres owned and farmed by the MacLean family. As in No. 19562, the award surpassed the estimates of damages made by experts for both sides, which ranged from a high of $128,000.00 to a government low of $67,700.00. The jury award totalling $137,500.00, including severance damages, was substantially less than the MacLeans' estimates of $200,000.00, plus.

According to the government, the trial court erred in declining to strike the owners' estimates of value during trial and in failing to set aside or modify the awards in accordance with the government's post-trial motion. It asserts that each landowner's opinion on value rests on an improper foundation and cannot support the awards. On review, however, we find no prejudicial error and, thus, we affirm.

Alex MacLean, who had farmed the family land all of his life, described its topography, its many uses and its distinct attributes. He grew small grains and raised and fed cattle. River bottom farming produced high yields of wheat and barley. Timber acreage provided necessary and natural shelter for his cattle summer and winter. A natural spring flowed throughout the year and that, together with shallow wells drilled on the bottom lands, provided ample water for his cattle. He estimated damages as a result of the government taking at more than $207,000.00.

Referring to his testimony on cross-examination:

"Q. * * * [H]ow did you arrive at your figures when you came to this value? What did you take into consideration?

A. Well, mostly the use of the land—what its worth to me. It was my home, it was my means of making a living, and what I could do with it and how would I get by without the land",

appellant asserts that Alex's opinion testimony rests on improper value concept of personal worth and not market price.

Alex's brother, Robert MacLean, also a lifelong resident and farmer on the subject acreage, estimated the value of the land taken at $200,000.00. His estimate was based on prices of land in nearby counties that he had attempted to purchase to replace the land taken. He described that available land as having rocky soil, lacking timber acreage necessary for sheltering livestock, and being generally less suitable for farming than his own.

Ralph Lang acquired an ownership interest in the Lang tracts only six months

prior to the time that the government took that land. No other personal identification with the property buttressed his opinion that his land when taken was worth $43,000.00. His co-owner, Walter Lang, however, had lived on the property and had farmed it until 1944. He explained that the land, part of it homesteaded by his father in 1916, had been actively cultivated until 1945, when his widowed mother left the farm. Thereafter, the land had been leased for haying and grazing livestock, though it had utility for general agricultural purposes. Walter, too, estimated the value of the land at $43,000.00 or $44,000.00, arriving at that figure by "listening to appraisers and pricing around".

However, the government asserts that Walter Lang's testimony on cross-examination:

"Q. Now which of those two [valuation] figures would you go with?

A. Well, that comes from offers I had from people that heard Oahe Dam was coming up, but we didn't think it would flood what's known as the Huff bottoms down there, and this was going into cabins for hunting and fishing. See, I was a big game guide for 17 years on deer hunting",

establishes an improper basis for receiving his value opinion in evidence.

 In eminent domain, as in other cases, federal courts admit evidence under rules generally applied by federal courts or under the rules of admissibility used by courts of the state in which the trial is held. Fed.R.Civ.P. 71A and 43 (a); United States v. 60.14 Acres of Land, 362 F.2d 660 (3d Cir. 1966). See also United States v. 25.406 Acres of Land, 172 F.2d 990 (4th Cir.), cert. denied, 337 U.S. 931, 69 S.Ct. 1496, 93 L.Ed. 1738 (1949); 5 Moore's Federal Practice, ¶ 43.04 (2d ed. 1968). The opinion testimony of a landowner on the valuation of his land has been admitted in federal courts without further qualification. United States v. Sowards, 370 F.2d 87 (10th Cir. 1966); Kintner v. United States, 156 F.2d 5, 7, 172 A.L.R.

232 (3d Cir. 1946); United States v. 131.76 Acres of Land, Benton County, Mo., 296 F.Supp. 1381, 1386–1387 (W.D. Mo.1969). The basis for admitting such testimony in federal courts is a presumption of special knowledge arising out of ownership. United States v. Sowards, *supra*; cf. United States ex rel. T.V.A. v. Easement and Right of Way, 405 F.2d 305 (6th Cir. 1968); Love v. United States, 141 F.2d 981 (8th Cir. 1944).

A landowner is also competent to testify on the value of his property under North Dakota rules of evidence. Doll v. Doll, 162 N.W.2d 691 (N.D.1968); Alm Construction Co. v. Vertin, 118 N.W.2d 737 (N.D.1963); Company A, First Reg., N.D.N.G. Training School v. Hughes, 49 N.D. 626, 193 N.W. 144 (1923). However, admissibility under the North Dakota rules does not rest on actual knowledge or on a presumption of knowledge. Rather, a landowner's testimony on value is admissible solely by virtue of ownership. McCaffery v. Northern Pac. Ry. Co., 22 N.D. 544, 134 N.W. 749 (1912).

The testimony of each of the landowners was admissible under both the federal and state rules of evidence. The trial court properly refused to strike their valuation testimony. This conclusion does not end our inquiry, however. We examine the underlying basis for that testimony to determine whether it carried sufficient weight to support the verdicts.

 Generally, all evidence on market value in condemnation cases should relate to what a willing buyer would pay a willing seller for the land. See United States v. Miller, 317 U.S. 369, 63 S.Ct. 276, 87 L.Ed. 336, 147 A.L.R. 55 (1943); United States v. 1,291.83 Acres of Land, Com. of Ky., 411 F.2d 1081 (6th Cir. 1969); United States v. State of South Dakota Game, Fish & P. Department, 329 F.2d 665 (8th Cir.), cert. denied, 379 U.S. 900, 85 S.Ct. 187, 13 L.Ed.2d 175 (1964). Sales of comparable land in the area most accurately evidence fair market value. United States v. Featherston, 325 F.2d 539 (10th Cir. 1963); United States v.

Whitehurst, 337 F.2d 765 (4th Cir. 1964). However, the law is not wedded to any particular formula or method for determining fair market value as the measure of just compensation. Sill Corporation v. United States, 343 F.2d 411, 416 (10th Cir.) cert. denied, 382 U.S. 840, 86 S.Ct. 88, 15 L.Ed.2d 81 (1965). Reproduction costs, capitalization of net income or an interaction of these determinants may also be considered. United States v. 60.14 Acres of Land, 362 F.2d 660 (3d Cir. 1966).[1] See also United States v. Ham, 187 F.2d 265 (8th Cir. 1951).[2] The weight to be given to factual and opinion evidence on fair market value is for the jury. Phelps Dodge Corp. v. Atchison, T. S. F. Ry. Co., 400 F.2d 20 (10th Cir. 1968); Evans v. United States, 326 F.2d 827 (8th Cir. 1964).

The government places principal reliance for reversal on United States v. Sowards, 370 F.2d 87 (10th Cir. 1966). In that case, the government, which owned land surface rights, condemned the owner's retained interest in coal deposits. The jury awarded the owner $37,270.00 solely on the owner's testimony that the 41,000 tons of coal in place in the land had a value of $1.00 per ton. The record reflected no market whatsoever for similar coal in the area for several years. In setting aside the award, Judge Pickett, speaking for the court, stated:

"But the owner's qualification to testify does not change the 'market value'

concept and permit him to substitute a 'value to me' standard for the accepted rule, or to establish a value based entirely upon speculation. * * * [H]is opinion has no probative value and is insufficient to sustain the award." 370 F.2d at 92.

We agree that an opinion based entirely on speculation could not support a verdict.

However, juries have been allowed to attribute weight to land value opinions of farmer-owners of agricultural land who have familiarity with the land and its productivity even though they lack experience in real estate valuation and have not based their estimates on sales of comparable property. See United States v. 1,516.90 Acres of Land, State of Tenn., 405 F.2d 913 (6th Cir.), cert. denied, United States v. Keatts, 395 U.S. 909, 89 S.Ct. 1752, 23 L.Ed.2d 222 (1969); United States ex rel. T.V.A. v. Easement and Right of Way, 405 F.2d 305 (6th Cir. 1968); United States v. 60.14 Acres of Land, supra; Equitable Life Assur. Soc. of United States v. Carmody, 131 F.2d 318 (8th Cir. 1942); United States v. 86.52 Acres of Land, 250 F.Supp. 619 (W.D.Mo.1966).

We are convinced that the landowners' testimony in these cases was entitled to be given some weight by the jury. We recognize that Ralph Lang had little personal knowledge about the property involved. He had been an owner for about six months, had received no income from

---

1. For example, in 60.14 Acres of Land, only the landowners testified on property values. The government complained that the testimony of the husband (and co-owner) should have been stricken because it did not go to fair market value, but was based on a fair return on his investment. The court said:

"While the husband did not testify with a precision which would have rendered such an argument frivolous, nevertheless, his evidence read in its ordinary meaning and not artificially was adequate for consideration by the jury under the accepted standard of what a willing buyer would pay in cash to a willing seller of the property." 362 F. 2d at 662.

2. The government cites Ham as a basis for striking testimony of Alex MacLean because net income as a criterion to determine market value of farm lands may be unreliable. Ham does not support the government's position. The case does not suggest that such testimony is inadmissible. The opinion stated:

"To fairly try the issue and determine just compensation in this case it was necessary for the jury to consider both sides of the dispute and to weigh the evidence of use value which tended to enhance compensation for the taking against the evidence of the sales value which tended to diminish it, * * *." 187 F.2d at 267.

the property, and had very little knowledge concerning the uses to which the land had been put in the past. However, we need not decide whether his opinion alone would support a verdict above the highest estimate of the expert appraisers. The co-owner, Walter Lang, furnished an identical estimate which reflected his knowledge concerning the special attributes of the land and some familiarity with pricing of land. A fair reading of Walter Lang's testimony refutes the government's contention that his opinion of value was based solely on a theory of enhancement due to the earlier construction of Oahe Dam or offers received for his property. We cannot say as a matter of law that his opinion on land value wholly lacked weight.

MacLeans' thorough familiarity with their land, together with Robert MacLean's investigation into possible purchase of other land to replace that taken by the government, furnished adequate suport to give some weight to opinion testimony of each.

■ Sales of comparable land referred to by the landowners' experts reflected a per acre sales price of from $65.00 to $331.00. Those comparable land values did not constitute independent evidence of value, but reflected only a basis for expert opinions. United States v. Smith, 355 F.2d 807 (5th Cir. 1966); United States v. Johnson, 285 F.2d 35 (9th Cir. 1961); United States v. 5,139.5 Acres of Land, 200 F.2d 659 (4th Cir. 1952); for a general discussion, see Annot., 12 A.L.R.3d 1064 (1967). Excellent photographs of the Lang acreage and of the MacLean tracts, as well as movies of the latter, demonstrated the specific characteristics and topography of the lands for the jury. The jury may well have considered that the landowners' appraisers conservatively compared the value of the tracts acquired by the government with arms-length sales of similar land. The jury, in its verdicts on the two properties, apparently did discriminate in the weight it gave the opinion testimony of the respective landowners.

In a condemnation case, the law relies heavily on the jury to reach a correct conclusion from all pertinent facts. See United States v. 25.406 Acres of Land, *supra.* Jury verdicts, however, are subject to judicial control. Trial courts have an obligation to modify or set aside awards that are clearly excessive. See Boyle v. Bond, 88 U.S.App.D.C. 178, 187 F.2d 362 (1951); United States v. Certain Parcels of Land, 149 F.2d 81 (5th Cir. 1945); United States v. 86.52 Acres of Land, *supra.* Cf. United States v. Merz, 376 U.S. 192, 84 S.Ct. 639, 11 L.Ed.2d 629 (1964). The trial court evidenced its feeling that the awards were not excessive by refusing to modify them in any way. Appellant has not demonstrated on this record that the trial court abused its discretion in refusing to do so.

■ We do not exercise a fact-finders prerogative of balancing the evidence. See Evans v. United States, 326 F.2d 827, 831 (8th Cir. 1964). On review, we cannot declare these jury awards erroneous as a matter of law.

Affirmed.